IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Criminal No. 3:09-CR-249-D(06) |
| | § | |
| MATTHEW NORMAN SIMPSON, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Matthew Norman Simpson ("Simpson") moves to dismiss the indictments in this case or, alternatively, for a new trial on grounds of wrongfully withheld and newly discovered evidence. Concluding that Simpson has failed to establish that the withheld or newly discovered evidence is material or that the evidence introduced at a new trial would probably produce an acquittal, the court denies the motion.[1]

I

Simpson was convicted by a jury of the offenses of conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349; aiding and abetting the commission of the offense of fraud and related activity in connection with electronic mail, in violation of 18 U.S.C. § 1037(a)(2) and (b)(2)(C); obstruction: destruction of evidence, in violation of 18 U.S.C. § 1512(c)(1); and false registration of a domain name, in violation of 18 U.S.C.

---

[1]Although Simpson's appeal is pending, the court retains the jurisdiction to deny his motion. *See* Fed. R. Crim. P. 33(b)(1) ("If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.").

§ 3559(g)(1).[2]  Simpson maintains that, on December 21, 2011, the day following the verdict, the United States of America ("United States")[3] filed a notice of election to intervene (in part) in a *qui tam* action filed in the United States District Court for the Western District of Pennsylvania.  The complaint that relator Constance Lyttle ("Lyttle") filed in the *qui tam* action alleges that AT&T Communications of Pennsylvania LLC knowingly facilitated "Nigerians perpetrating a scam/fraud" and "knowingly submitted to the government fraudulent bills" in connection with this scam/fraud.  D. Mot. 11 (citing complaint) (bold font omitted).  The United States's complaint in intervention describes the *qui tam* action as one "to recover millions of dollars that have been paid to AT&T for its improper handling and billing [for the subject] calls made by Nigerian and other international users seeking to defraud merchants in the United States."  *Id.* at 12 (quoting Ex. C at 1) (bracketed material in original) (bold font omitted).[4]  Simpson argues that the *qui tam* action falls within the type of exculpatory evidence that the government was required to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their

---

[2]The jury found Simpson not guilty of the offense of obstruction: destruction of evidence, in violation of 18 U.S.C. § 1512(k) and 18 U.S.C. § 1512(c)(1), charged in Count Six of the fourth superseding indictment.

[3]When referring to the United States as a party to the *qui tam* action, the court uses the term "United States."  Otherwise, the court refers to the United States as the government.

[4]Although Lyttle's complaint referred to the defendant as "AT&T Communications of Pennsylvania LLC," D. Mot. Ex. B at 3, the United States's complaint in intervention referred to the defendant as "AT&T Corporation, a/k/a/ AT&T Accessible Communications Services, . . . a U.S. company located in Bedminster, New Jersey," which "is a subsidiary of AT&T, Incorporated, a U.S. company headquartered in Dallas, Texas," *id.* Ex. C. at 3.

progeny, and under the terms of his specific discovery requests. He contends that, because the government did not disclose the existence of the *qui tam* action, he is entitled to dismissal of the indictments or, alternatively, a new trial. The government opposes the motion.

II

In *Brady* the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Brady*, 373 U.S. at 87. The Supreme Court later extended this principle to include material evidence "affecting" the credibility of a witness. *Giglio*, 405 U.S. at 154. "When a defendant seeks a new trial on the basis of a *Brady* violation, he must show that (1) the prosecution did not disclose the evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material." *United States v. Davis*, 609 F.3d 663, 696 (5th Cir. 2010) (citation and internal quotation marks omitted). Materiality "is generally the most difficult [element] to prove." *Mahler v. Kaylo*, 537 F.3d 494, 500 (5th Cir. 2008). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (citations and internal quotation marks omitted).

Motions for a new trial "based on newly discovered evidence are 'disfavored and reviewed with great caution.'" *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004) (quoting *United States v. Erwin*, 277 F.3d 727, 731 (5th Cir. 2001)) (standard on appeal).

To be entitled to a new trial based on newly discovered evidence, a defendant must demonstrate the following: "(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal." *United States v. Franklin*, 561 F.3d 398, 405 (5th Cir. 2009) (quoting *United States v. Bowler*, 252 F.3d 741, 747 (5th Cir. 2001)). "If the defendant fails to demonstrate any one of these factors, the motion for new trial should be denied." *Wall*, 389 F.3d at 467 (citation omitted).

## III

The court denies Simpson's motion insofar as based on an alleged *Brady* violation because, assuming *arguendo* that he can satisfy the other elements, he has failed to establish that the evidence in question was material. It denies the motion insofar as based on newly discovered evidence because, assuming *arguendo* that he can satisfy the other elements, he has failed to establish that the evidence in question was material and that the evidence introduced at a new trial would probably produce an acquittal.

### A

Simpson argues that this evidence was material in two respects: first, it would have provided a substantial basis to discredit AT&T, whom Simpson calls the "principal complainant," and undermine its credibility; and, second, it would have provided a

substantial basis to credit Simpson's testimony that Nigerian scammers were involved with the attempt to defraud Bandwidth.com ("Bandwidth"). He contends that his trial strategy would have been markedly different because he would not have conceded in opening statement that any contention that AT&T was not due money would be preposterous, and he would never have implied that AT&T and the government were bedfellows. Instead, he would have mounted a far more vigorous challenge to AT&T's credibility. He maintains that he would have been far more aggressive in challenging the purported victim's hypocrisy.

B

The court turns initially to Simpson's second argument. The government offered evidence at trial that Aston Technology ("Aston") had significant international usage on the network of Bandwidth within a period of a few days. When a Bandwidth representative informed Simpson, Simpson stated in an instant message that Aston was "Nigerian scammers basically." Simpson testified similarly at trial.[5] But Simpson neither stated nor testified that *AT&T* could have been the victim of Nigerian scammers. The context was

---

[5]The court in sentencing Simpson ruled that the part of ¶ 121 of the presentence report that stated that "Simpson told Michael Faulkner he used his position within Bandwidth.com to convince Bandwidth.com that Aston was made up of 'Nigerian scammers'" would not affect sentencing. *See* Rule 32(i)(3)(B) (permitting court to determine that ruling on disputed portion of presentence report is unnecessary because the matter will not affect sentencing). The court also ruled that it would not rely on its tentative finding that Simpson committed perjury when he testified "that when he told bandwidth.com to shut down Aston Technology because it might be Nigerian scammers, he said that because there was that type of fraud that was very common at the time[.]" Jan. 24, 2012 Mem. Op. & Order 4.

*Aston's* defrauding *Bandwidth*. And even if the jury had known that the United States had accused AT&T in a *qui tam* action of "improper[ly] handling and billing of thousands of Internet Protocol Relay calls made by Nigerian and other international users seeking to defraud merchants in the United States," D. Mot. Ex. C at 1 (United States complaint in intervention), and of the specific grounds for this claim, and thus not considered Simpson's statement and testimony about Nigerian scammers to be wholly implausible or mendacious, there was significant trial evidence that Simpson knew that Aston was a sham company whose fraudulent activities were not the work of Nigerian scammers. So it would not have affected the outcome of the trial had the jury known that the United States had accused AT&T (*not Aston* or *Bandwidth*) of facilitating the fraud of "Nigerian and other international users." Moreover, there was significant evidence at trial of Simpson's guilt of the conspiracy charged in Count One, which involved far more than Aston, Bandwidth, or AT&T.

## C

Simpson's other argument is that he would have changed his trial strategy and mounted an effective attack on AT&T, whom he characterizes as the "principal complainant" in the case. He essentially contends that, armed with evidence that the United States had accused AT&T of improperly handling and billing thousands of Internet Protocol Relay calls made by Nigerian and other international users seeking to defraud merchants in the United States, he would have aggressively challenged the credibility of AT&T as a complainant. But there is no basis to find that the AT&T witnesses who testified at trial

were involved in the conduct at issue in the *qui tam* action, so the jury would have had to have viewed AT&T monolithically—a doubtful proposition given its corporate size. And there were numerous other victims of the conspiracy. So even if the testimony of the AT&T witnesses had been completely discredited by this evidence, and the jury's assessment of AT&T had been entirely unfavorable as a result,[6] there was significant proof during trial regarding numerous other victims of the conspiracy. The conspiracy victimized too many entities for an attack (even a vigorous one) on AT&T to have made a difference.

Simpson has therefore failed to show that, had the evidence on which he relies been disclosed, there is a reasonable probability that the result of the trial would have been different—that is, a probability sufficient to undermine confidence in the outcome. Similarly, he has failed to show that the evidence introduced at a new trial would probably produce an acquittal.

---

[6]Because sentencing issues (including loss and restitution amounts) are for the court to decide, the jury's rejection of evidence concerning AT&T would not preclude the court from finding during the sentencing phase that AT&T is a victim of the conspiracy.

\*   \*   \*

For the foregoing reasons, Simpson's May 10, 2012 motion to dismiss or, alternatively, for a new trial on grounds of wrongfully withheld and newly discovered evidence is denied.

**SO ORDERED.**

July 10, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE